IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL McKINNIS | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | |
| HARTFORD LIFE AND ACCIDENT | : | |
| INSURANCE COMPANY (Incorrectly | : | |
| styled as Hartford Life) | : | NO. 02-cv-3512 |

## O R D E R

**AND NOW**, this           day of                       , 2004, upon consideration of the Summary Judgment Motion filed on behalf of Defendant, Hartford Life and Accident Insurance Company (incorrectly styled as Hartford Life), and any response thereto, it is hereby **ORDERED** and **DECREED** that this motion is granted and Plaintiff's Complaint against Defendant, Hartford Life and Accident Insurance Company is dismissed with prejudice.

**BY THE COURT**:

_____
Honorable R. Barclay Surrick, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL McKINNIS | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | |
| HARTFORD LIFE AND ACCIDENT | : | |
| INSURANCE COMPANY (Incorrectly | : | |
| styled as Hartford Life) | : | NO. 02-cv-3512 |

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

For the reasons set forth in the accompanying Memorandum of Law in Support of Defendant's Motion for Summary Judgment it is respectfully requested that this Court dismiss all claims against Defendant with prejudice.

Oral argument is requested.

Respectfully submitted,

**SWEENEY & SHEEHAN**

By: _____
Barbara A. O'Connell, Esquire
Identification No. 46461
1515 Market Street, 19th Floor
Philadelphia, PA 19102
(215) 563-9811
Attorneys for Defendant, Hartford Life
and Accident Ins. Co.

DATE:     December 23, 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL McKINNIS | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | |
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY (Incorrectly styled as Hartford Life) | : : : | NO. 02-cv-3512 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

I.   **STATEMENT OF THE FACTS**

   A.   Background of Plaintiff's Claim

   Plaintiff, Michael McKinnis brings the present action pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C.S. §101, et. seq. (hereinafter "ERISA"), based upon Defendant, Hartford Life and Accident Insurance Company's (hereinafter "Hartford"), denial of Plaintiff's claim for short term disability benefits. Plaintiff's Amended Complaint is attached as Exhibit "A". Plaintiff's employment at WORLDCOM, Inc. ended April 20, 2001. See Defendant Hartford Life and Accident Insurance Company's Answer to Plaintiff's First Amended Complaint, attached as Exhibit "B" at ¶3 and the Administrative Record regarding Plaintiff's claim for short term disability benefits included in the Appendix from H49 through H110 at p.H62 and H66. Plaintiff's employer further indicated to Hartford that Plaintiff was paid until April 27, 2001 through his available paid sick time. That was his last day paid by the employer WORLDCOM. Appendix H66.

   During his employment, Plaintiff was covered by a policy of short term disability insurance offered by his employer WORLDCOM and underwritten by Hartford in Policy No: GRH-673565. Exhibit "A" and "B", at ¶¶4,5 and the complete Hartford Life and Accident Insurance Company Policy, Appendix, H1 through H48.

Plaintiff made a claim for short term disability benefits via telephone on or about April 23, 2001. Appendix H110. On the same day as that telephone call was received, April 23, 2001, Hartford sent a letter to Plaintiff requesting information from his physician's office regarding his functional capacities and limitations. The information requested included:

- Diagnosis and procedures performed
- Treatment dates, treatment plan and medications
- Examination findings and diagnostic test results
- Specific limitations affecting your ability to work
- Expected recovery dates and treatment plan. Appendix, H57-58

This correspondence went on to instruct Plaintiff that "after we have received your employer and physician information, your claim will be evaluated and we will determine if you are eligible to receive benefits." Appendix, H57.

On May 2, 2001, Hartford's Claim Examiner had a telephone conversation with Plaintiff's psychotherapist, Mr. Silver. Mr. Silver advised Hartford that he had not "taken Plaintiff out of work", had seen him only once and had not yet determined if he was disabled. The Claims Examiner then advised Plaintiff that he needed to have an attending physician call Hartford to confirm that a physician told Plaintiff to stay out of work. Appendix H110, entry dated 5/2/2001 and H109, entry dated 5/2/2001. The policy expressly requires treatment by a physician for injury, sickness, mental illness or substance abuse to qualify as a disability condition. H12, "Exclusions" at #1. No further information regarding disability was received and Hartford again sent a letter to Plaintiff on May 17, 2001 again requesting information regarding who his medical providers were, proof of total disability and evidence of total disability while eligible under the policy. H55-56.

On May 18th, "Suzanne" from Dr. Petrone's office called Hartford regarding Plaintiff's short term disability claim. The information provided indicated only that Plaintiff's diagnosis was depression, alcohol abuse and hypertension and that Plaintiff was being admitted to an inpatient treatment center. Plaintiff's first visit with Dr. Petrone was May 18, 2001. Appendix H109, entry dated 5/18/2001. There was still no evidence in the record of any disability starting before or on Plaintiff's last day worked, April 20, 2001 through May 18, 2001. On June 1, 2001, William Silver, the psychotherapist social worker, forwarded a three paragraph letter to Hartford indicating that he saw Plaintiff on April 26, 2001 and May 2, 2001. Mr. Silver recommended an alcohol rehabilitation program for Plaintiff however, he does not disable Plaintiff from employment. See three paragraph note from William Silver, DSW at H68. Even if he had opined Plaintiff was disabled, he is not a physician or surgeon as required by the policy. H12.

From June 6th through June 7th, Hartford claims personnel made multiple telephone calls to both Plaintiff and his medical providers to attempt to obtain documentation of disability as of Plaintiff's last day worked. On June 6, 2001, Hartford contacted Dr. Petrone's office for additional medical information. "Joy" of Dr. Petrone's office indicated that Plaintiff was seen there for the very first time on May 18, 2001. Appendix H105, entry dated 6/6/01. "Joy" informed the Claims Examiner that Dr. Petrone would not certify any disability prior to this date. Claim denial letter, Appendix H50-53 at H52.

The Claims Examiner then followed up with Dr. Pribitkin on June 6, 2001 and Dr. Pribitkin's office through "Rachel" indicated Plaintiff's first office visit there was May 2, 2001 with a diagnosis of allergies. Dr. Pribitkin's office declined to certify Plaintiff as disabled. During this same time, Hartford's claim personnel contacted Plaintiff's employer's representative Dorrine Blea to attempt to again confirm that Plaintiff's last day of work was April 20, 2001 and Ms. Blea confirmed that Plaintiff's last day of work was April 20, 2001 and that he was paid for vacation time through April 27, 2001. He was no

-3-

longer actively at work at any time after April 27, 2001. Appendix H105, entry dated 6/7/01, H66, and claim denial letter at Appendix H52.

Through multiple telephone conversations, email, and mail correspondence from April 23, 2001 through June 7, 2001, Hartford worked diligently to ascertain whether Plaintiff was disabled as of his last day worked, April 20, 2001 as required under the terms of the short term disability policy.

B.     Terms of WORLDCOM's Short Term Disability Policy With Hartford

The Hartford policy governing the short term disability benefit plan for WORLDCOM specifically states:

> When does your coverage terminate?
>
> Your coverage will terminate on the earliest of:
>
> [1]  The date this Group Insurance Policy terminates;
>
> [2]  The date this Group Insurance Policy no longer insures your class;
>
> [3]  The date premium payment is due but not paid by the Employer;
>
> [4]  The date of the last period for which you make any required premium contribution, if you fail to make any further required contribution;
>
> **[5]  The date on which you cease to be an Active Full Time Employee in an eligible class, including:**
>
>    (a) temporary layoff;
>    **(b) leave of absence including but not limited to leave for military service;**
>    (c) work stoppage (including a strike or lock out); or
>    (d) the date your employer ceases to be a participant employer if applicable

See policy at H13 (emphasis added). Plaintiff was not granted a paid Family and Medical Leave Act leave

-4-

therefore, his employer did not continue coverage during his leave from April 20th through his first day of his alleged disability which was May 18, 2001.

The policy defines "actively at work" as follows:

> You will be considered to be actively at work with the Employer on a day which is one of Employer's scheduled work days if you are performing, in the usual way, all of the regular duties of your job on a full time basis on that day. (Appendix H6.)

An "active full time employee" is defined as:

> An employee who works for the Employer on a regular basis in the usual course of the Employer's business. Such employee must work the number of hours in the Employer's normal work week. (Appendix H6.)

Therefore, Plaintiff's last day of active full time employment was April 20, 2001. He was not granted paid Family and Medical Leave Act leave. His first date of documented disability is May 18, 2001.

C. <u>The Administrative Record Contains No Evidence of Disability On the Date Plaintiff's Short Term Disability Coverage Terminated On April 20, 2001, The Date He Ceased to Be an Active Full Time Employee</u>

In light of the extensive evaluation and investigation performed by Hartford, Plaintiff was not covered for short term disability benefits on May 18, 2001, the day he may have qualified as disabled. On June 7, 2001, by way of letter, Hartford denied Plaintiff's short term disability claims. Appendix H50-53. In this correspondence, Hartford Examiner, Tina M. Palmer, exhaustively explains the policy provisions, the extensive efforts taken by Hartford to obtain evidence of disability as of Plaintiff's last day worked and the complete reasons why the claim was denied. In conclusion, Ms. Palmer states:

> Based on our review of the plan language and the information provided from Dorrine Blea from the Human Resource Department. The medical information provides Dr. Petrone indicated he will not certify disability

>prior to your first office visit of 5/18/01. We reviewed your claim; the Hartford Life considered your claim file as a whole for the purposes to determine your entitlement to plan benefits. With no indication that you were treated by a physician or medical certification for your disability from your last day of work of 4/20/01 through 5/17/01. The date on which you cease to be an active full time employee in an eligible class, including; leave of absence supports your non-eligibility for Short Term Disability benefits.

Appendix H52.

On June 20, 2001, Hartford received a faxed correspondence from Adrian Reid, an attorney for Plaintiff which allegedly included a June 15, 2001 report from Dr. Louis R. Petrone. See H75 and Exhibit "C", report of Dr. Petrone dated June 15, 2001. Hartford's records reflect that there was no attachment submitted with this faxed correspondence. H102, entry dated 6/25/01. The report is not part of the administrative record. It was provided for the first time in Plaintiff's Rule 26 Disclosures in this case. During the pendency of the claim, there was no additional information submitted. On the face of that correspondence, counsel for Plaintiff concedes "in particular, my client is making a claim for short term disability <u>starting on May 18, 2001</u>" (emphasis added). Appendix H75. This disability date is consistent with all of the prior findings by Hartford and <u>does not qualify for coverage under the short term disability plan</u> as Plaintiff was not actively at work in an eligible class after April 20, 2001 and has no evidence of disability as of the end of his active full time employment.

Even had the report of Dr. Petrone been attached to the letter forwarded by Adrian Reid to Hartford, it is clear that the letter can not change Hartford's determination. The letter states "this is to verify that Michael McKinnis is under our medical care from May 18, 2001 to the present." Exhibit "C". In addition, Dr. Petrone states "he needs to be on disability status until he has completed the alcohol rehabilitation program which will last for six weeks." Dr. Petrone goes on to state "he can return to work

as soon as his rehab program is completed." Exhibit "C". Therefore, the period of short term disability apparently had not yet started as of the date of Dr. Petrone's report, June 15, 2001, and would last only six weeks.

In light of this uncontroverted information that Plaintiff was not disabled as of his last day worked or his last day paid by WORLDCOM, Hartford's denial of Plaintiff's short term disability claim is not arbitrary and capricious as there is not a shred of information which would support a finding of disability from work during the period of April 20, 2001 up through and including May 17, 2001.

## II. STATEMENT OF THE LAW

### A. Summary Judgment Standard

Under the Federal Rules of Civil Procedure, a Motion for Summary Judgment must be granted when the "pleadings, depositions, answers to interrogatories and admissions in the file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56. The court must accept the non-movant's version of facts as true and resolve any conflicts in the non-movant's favor. Big Apple B.M.W., Inc. v. B.M.W. of N. Amer., Inc., 974 F. 2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993). A factual dispute is material only if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248.

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). Once the movant has done so, however, the non-moving party may not merely rest on its pleadings. See Fed. R. Civ. P. Rule 56(e). Rather, the non-movant must then "make a showing sufficient to establish the existence of every element essential to the case, based upon affidavits or admissions in the file." Harter v. G.A.F. Corp., 967 F.2d

846, 852 (3d. Cir. 1992); see also Anderson, 477 U.S. at 255.

    B.    <u>Defendant Is Entitled to Summary Judgment</u>

        1.    The Arbitrary and Capricious Standard Applies to the Present Case

ERISA itself does not provide a standard to review decisions of a plan administrator or fiduciary. In <u>Firestone Tire and Rubber Co. v. Bruch</u>, 489 U.S. 101 (1989), the United States Supreme Court held that an arbitrary and capricious standard of review would be applied to decisions of a plan administrator or fiduciary when the plan gave the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan. In addition, the Supreme Court recognized that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor in determining whether there is an abuse of discretion.'" Id. at 115 (quoting Restatement (Second) of Trusts §187, Comment *d* (1959).

In reviewing a denial of disability benefits under ERISA, the Court must first determine the extent to which the administrator has discretion to interpret the plan. <u>Orvosh v. Program of Group Ins. For Salaried Emp.</u>, 222 F. 3d 123, 129 (3d Cir. 2000). When a plan affords the administrator discretion to determine an individual claimant's eligibility for benefits, a denial of benefits will be reviewed under the arbitrary and capricious standard. *Id*.

The present plan specifically provides that Hartford "has full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." Appendix, H15.

It is clear beyond argument that, by its terms, this plan gives maximum discretionary authority to Hartford to construe and interpret the plan and to make all determinations of eligibility for

-8-

benefits. Accordingly, this Court must apply the arbitrary and capricious standard to its analysis of Defendant's denial of Plaintiff's claim for disability benefits.

Under the deferential arbitrary and capricious standard, an administrator's decision will only be overturned if it is without reason, unsupported by substantial evidence or erroneous as a matter of law [and] the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits. Lasser v. Reliance Standard Life Insurance Co., 344 F.3d 381, 384, (3rd Cir. 2003), citing, Pinto v. Reliance Standard, 214 F.3d, 377, 387 (3d Cir. 2000).

In Pinto v Reliance Standard Life Insurance Company, 214 F.3d 377 (3d. Cir. 2000), the court established that in circumstances where an employer "pay[s] an independent insurance company to fund, interpret, and administer a plan," a conflict of interest "invites a heightened standard of review." Pinto, 214 F.3d at 383. The defendant in Pinto was an insurance company who served as both Plan Administrator and Claims Adjudicator which was "structured such that its profits [were] directly affected by the claims it pays out and those it denies." Pinto, 214 F.3d at 388. While establishing a heightened standard of review where such a conflict exists, the Pinto court recognized that the level of conflict must be assessed on a case by case basis. The Pinto court specifically stated that it did "not, of course, pretend to establish an absolute per se rule" because it recognized that "different relationships between the parties could effect a different result." Id. at n.6.

Subsequent to the Pinto decision, the District Courts have applied a somewhat heightened arbitrary and capricious standard in most cases where there is a conflict between the insurance company's role as Plan Administrator and Claims Administrator.

        2.        Only A Slightly Heightened Arbitrary And Capricious
Analysis Is Warranted In This Case

As outlined *supra*, the Third Circuit Court of Appeals has determined that, where a conflict of interest is found, the trial court should apply a "heightened" or "sliding scale" approach that integrates the conflict as a factor in applying the arbitrary and capricious standard. <u>Pinto v. Reliance Standard Life Ins. Co.</u>, 214 F.3d 377, 392 (3d Cir. 2000). However, a conflict does not act to shift the burden of proof to an administrator. *Id*. The burden of proving that he qualifies for benefits under the plan at issue lies with the Claimant. <u>Myers v. Liberty Life Assurance Co.</u>, 2002 WL 1019029, at p.6, (E.D. Pa. 2002), <u>citing</u>, <u>Mitchell v. Eastman Kodak</u>, 113 F.3d 433, 439 (3d Cir. 1997).

A court applying the <u>Pinto</u> standard must "consider the nature and degree of apparent conflict with a view to shaping their arbitrary and capricious review of benefits determinations of discretionary decisionmakers." The court may consider any of the following factors in determining the appropriate degree of deference: "the sophistication of the parties, the information accessible to the parties and the exact financial arrangement between the insurer and the company." <u>Pinto v. Reliance Standard Life Ins. Co.</u>, 214 F. 3d at 392 (3d Cir. 2000). Additionally, the <u>Pinto</u> court determined that the standard is "more penetrating the greater is the suspicion of partiality, less penetrating the smaller that suspicion is." *Id*. The court "should look at any and all factors that might show bias and use common sense to put anywhere from a pinky to a thumb on the scale in favor of the administrator's analysis and decision." <u>Gritzer v. CBS, Inc.</u>, 275 F.3d 291, 295, n.3 (3d Cir. 2002).

In applying the "sliding scale" standard, the <u>Pinto</u> court stated "we are deferential, but not absolutely deferential." <u>Pinto</u>, 214 F.3d at 393. The court's deference depended upon the quantum of evidence adduced suggesting a conflict; "the greater the evidence of conflict on the part of the

-10-

administrator, the less deferential our abuse of discretion standard. *Id.* In making this determination, the Pinto court looked not only to the reasonableness of the result but also to the "process by which the result was achieved." *Id.*

Cases decided since Pinto have more fully defined the applicable range on the "sliding scale" standard of review. In Lasser v. Reliance Standard, 344 F.3d 381 (3d Cir. 2003), the United States Court of Appeals for the Third Circuit affirmed the District Court's finding that Reliance had no conflict other than the inherent structural conflict of an insurer/administrator and as such, the correct standard of review was at the mild end of the heightened arbitrary and capricious scale and that Reliance should be afforded a "moderate degree of deference." Id. at 385.[1]

Like in Lasser, there is no conflict in the instant case other than the fact that Hartford administers the short term disability plan and pays the claims. Plaintiff was afforded full review of his claim. Plaintiff failed to make a prima facie showing of disability during the time he was covered under the plan. There is no evidence that Hartford treated facts in an inconsistent manner. Hartford was never inconsistent. There is no indication that there was any disagreement on how to handle Plaintiff's claim which could support the view that when at a crossroad, Hartford chose the decision more favorable to Hartford. Quite simply, there is no evidence of bias beyond the fact that Hartford both funds and administers the plan. Accord, Myers v. Liberty Life Assurance, 2002 WL 1019029, at p.6 (E.D. Pa. 2002).

---

[1] The decision in Lasser does not take into account the United States Supreme Court's decision in Black & Decker v. Nord, 123 S. Ct. 1965, (May 27, 2003). The Lasser court opined that once a disability claimant makes a prima facie showing of disability through physician reports, the burden shifts to the insurer to support the basis of its objection. However, the Lasser court appears to be embracing a "treating physician's presumption" which was disallowed by the United States Supreme Court in Nord.

In light of this total absence of evidence suggesting a conflict of interest, the court should apply a slightly heightened but very close to arbitrary and capricious standard. Under this standard, the denial of Plaintiff's long term benefits claim was the only reasonable decision in light of the evidence before the defendant.

       3.       The Unanimous Authority Interpreting the Language of
The Hartford Short Term Disability Plan Supports
Hartford's Claim Decision Denying Short Term Disability
Benefits

In applying the heightened arbitrary and capricious standard, the court limits its review of the decision to the evidence in the administrative record that was before the administrator at the time of the benefit denial. Mitchell v. Eastman Kodak Co., 113 F.3d 443, 440 (3d Cir. 1997), cited in Byrd v. Reliance Standard, 2004 WL 2823228 (E.D. Pa. December 7, 2004).

The policy language at issue has been reviewed by several Federal Courts and been found to be clear and unambiguous. The almost identical policy language at issue in the instant case was reviewed by the United States District Court for the District of New Jersey in Greenblatt v. ITT Hartford Life Insurance Company, et al, 2002 WL 31455289 (D. NJ. 2002). Mr. Greenblatt had last reported to work at Wakefern Food Corporation in February 1994 and became totally disabled in August 1994. After conducting the identical type of investigation done in the instant case, Hartford determined that Mr. Greenblatt had not worked since March 19, 1994. Therefore, based on the identical policy language at issue in this case, Hartford determined that Plaintiff's coverage had terminated on the date he ceased to be an active full time employee. Therefore, there was no coverage for disability on the date he became disabled in August 1994. Id. at *1-2.

After a comprehensive review of the language of the policy and the application of the arbitrary and

capricious standard, the court determined that the record revealed that Mr. Greenblatt's last day worked as a full time employee was in March of 1994 and therefore, he was not eligible for disability benefits after that date. Id. at *6. The court went on to approve the correspondence Hartford had sent to Mr. Greenblatt advising him of its determination and setting forth in detail the information available to and considered by Hartford, the specific provisions of the policy involved, and the basis for Hartford's determination to deny benefits. Id. at *6.

The court expressly held:

> "The totality of the circumstances, including the information provided by Greenblatt regarding his 'last work date' and the date he became 'totally disabled and unable to work,' the information provided in three separate documents by Consolidated [Greenblatt's employer], the medical information submitted, and the clear and unambiguous language of the Wakefern policy, support Hartford's determination to deny Greenblatt's claim for long term disability benefits. Based on the relevant provisions of the Wakefern policy and the facts outlined by the parties, Hartford's denial of coverage was not irrational, arbitrary and capricious."

Id. at *6. The District Court granted summary judgment in favor of Hartford and Wakefern.

This identical result also occurred in Perry v. Hartford Life Insurance Companies, et al, 347 F.3d 343 (1st Cir. 2003). In Perry, Hartford had determined that the employee's eligibility for benefits terminated on the date that she ceased to be a full time employee due to her leave of absence for occupational injury. Janis Perry worked full time until October 15, 1992 when she became disabled by a hand injury for which she received workers' compensation benefits. Under the language of the Hartford plan, the insurance "will terminate on the earliest to occur of the following dates:

> . . .
> (5) the date your employment terminates or your eligibility for this plan terminates. Your eligibility terminates on the date you case to be an Active Full time Employee: . . .

(b) due to temporary layoff, leave of absence or a general work stoppage.

Id. at 345.

As the policy in Perry required disability be due to non-occupational accidental bodily injury or non-occupational sickness, the Plaintiff did not qualify as covered under the plan beyond her last day of active full time employment.

The First Circuit affirmed the District Court's grant of summary judgment in favor of Hartford, expressly stating that Perry's argument that she was entitled to benefits flew in the face of the unambiguous terms of the plan. In quoting the exact language of the plan, the court held that the phrase "eligibility terminates on the date [she] ceases to be an Active Full Time Employee due to a leave of absence" was clear and unambiguous. Id. at 345.

The court states:

> "Where, as here, the words of an insurance policy are plain, we will 'refrain from conjuring up ambiguities' and likewise 'abjure unnecessary mental gymnastics which give the terms of the policy a forced or distorted construction.' (citations omitted). Giving the straightforward language in the plan it's natural meaning, (citation omitted), we conclude that the District Court did not err in holding that Perry was not a participant and therefore failed to state a claim against Hartford or New England Business Services. Id. at 345-346.

This result has also consistently occurred in other Federal District Courts. In McCourtney v. McKenchnie Investments, Inc., 976 F. Supp. 1259 (D. Minn. 1997) similar language was found to be unambiguous and grounds for denial of a claim for disability benefits. In McCourtney, a Paul Revere Life Insurance policy stated that to participate in the plan, an employee must work at least 30 hours per week. Plaintiff had ceased working as of November 1, 1993 and within a week of that time suffered a myocardial infarction which disabled him. The court granted summary judgment for Defendant Paul Revere Life

-14-

Insurance Company holding that the denial of Plaintiff's long term disability benefits claim because he was no longer a "full time employee" under the plan was supported by "substantial evidence in the record supporting the finding that McCourtney was no longer a full time employee on the date he claims he became disabled." Id. at 1262.

Even when an employee became disabled one day prior to his eligibility for benefits, the language of the plan was given effect in Rodriguez v. Reliance Standard Life Insurance Company, 2004 WL 2002488 (N.D. Cal. 2004). The Plaintiff's decedent had worked for the employer through a ninety day waiting period however, the effective date of the policy for life insurance was the first date of the policy month coinciding with or next following the completion of the waiting period. Ms. Rodriguez' father, Dana Pitman, completed his ninety day waiting period on August 30, 2000. He died the following day. There was no life insurance in effect as, he did not reach the effective date which would have been the first day of the policy month coinciding with or next following the completion of the waiting period which would have been September 1, 2000. In evaluating the policy language, the court held that the term "coinciding with or next following" means that coverage begins on the first day of the next month. The court held that that interpretation was not unreasonable and did not conflict with the plain language of the policy, therefore no benefits were payable. Id. at *9. Accord, Young v. Pennsylvania Rural Electric Association, 2003 WL 22701472 (3rd Cir. 2003) [former employee was not entitled to benefits as he had ceased reporting to work and became a full time employee elsewhere before the date of eligibility outlined in the plan. Requirement of "actively employed" was not met.]

4. <u>There is No Evidence In the Administrative Record that Plaintiff Was Actively At Work at Any Time Beyond April 20, 2001 Or Was Disabled, If He Was Disabled At Any Time, Before May 18, 2004</u>

The administrative record is crystal clear. Plaintiff did not work beyond April 20, 2001. The first mention of disability comes in the report which was never received by Hartford, Exhibit "C", from Louis R. Petrone which states "he needs to be on disability status until he has completed the alcohol rehabilitation program which will last for six weeks." The correspondence from Dr. Petrone indicates that Plaintiff was first seen by Dr. Petrone on May 18, 2001 and that he could return to work at the completion of his rehabilitation program. Dr. Petrone declined to certify Plaintiff as disabled prior to that date. H50-53 at H52. On the face of Dr. Petrone's report, Exhibit "C", it does not appear that Plaintiff had begun the rehabilitation program as of the date of the correspondence, June 15, 2001. Therefore, perhaps the period of disability did not begin, if it began at all, until after June 15, 2001. These dates are not material to the instant motion as, there is a complete absence of any evidence that Plaintiff was disabled by any physician on or before April 20, 2001. Plaintiff was, without question, on a leave of absence from his job and his coverage terminated on his last day worked prior to that leave of absence pursuant to the express, unambiguous terms of the policy.

Hartford issued its claim determination dated June 7, 2001 where it communicated in detail the information available to Hartford and considered by it, the specific provisions of the Hartford policy involved, and the basis for Hartford's determination to deny benefits. In light of the clear, unambiguous language of the policy and the lack of evidence of disability submitted, Hartford's denial of coverage was not arbitrary and capricious, even under <u>Pinto</u>'s slightly heightened standard of review.

## IV. CONCLUSION

Based upon all of the arguments addressed herein, Defendant presently requests this Honorable Court to Dismiss Plaintiff's Amended Complaint by signing an Order in the form attached hereto.

Respectfully Submitted,

**SWEENEY & SHEEHAN**

By: *[signature]*
Barbara A. O'Connell
Identification No. 46461
1515 Market Street, 19th Floor
Philadelphia, PA 19102
(215) 563-9811
Attorney for Defendant, Hartford Life
and Accident Insurance Company

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL McKINNIS | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | |
| HARTFORD LIFE AND ACCIDENT | : | |
| INSURANCE COMPANY (Incorrectly | : | |
| styled as Hartford Life) | : | NO.  02-cv-3512 |

### CERTIFICATION OF SERVICE

I hereby certify that service of the foregoing Defendant's Motion for Summary Judgment, was made upon all interested counsel in the above matter via U.S. First Class Mail on December 23, 2004.

_____
BARBARA A. O'CONNELL

**Interested Parties**
Adrian R. Reid, Esquire
2207 Chestnut Street
Suite 200
Philadelphia, Pennsylvania 19103