IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL MCKINNIS,        :     CIVIL ACTION
                           :
        Plaintiff,        :     NO. 02-3512
                           :
        v.                 :
                           :
HARTFORD LIFE,        :
                           :
        Defendant.     :

**MEMORANDUM AND ORDER**

Slomsky, J.                                      May 22, 2009

## I.    INTRODUCTION

This civil action was removed to this court from the Philadelphia Court of Common Pleas on May 31, 2002.  In his First Amended Complaint, filed April 12, 2004, Plaintiff alleges a cause of action under the Employment Retirement Income Security Act of 1974 ("ERISA"), based upon Defendant Hartford Life's ("Hartford") failure to pay Plaintiff disability benefits under his employer's Short-Term Disability Group Insurance Policy (the "Hartford Policy").   On December 23, 2004, Defendant moved for summary judgment on Plaintiff's claim that he was entitled to short-term disability benefits (Doc. No. 21).  Plaintiff filed his answer in opposition to Defendant's Motion for Summary Judgment (Doc. No. 22) on January 24, 2005.  The Motion for Summary Judgment is ripe for disposition and will be granted.[1]

---

[1]  Defendant's Motion for Summary Judgment has been ripe for disposition since January 24, 2005.  This case was transferred to this Court on April 28, 2009.

1

II.     **FACTUAL BACKGROUND**

A.      *Plaintiff's Claim for Benefits*

Plaintiff commenced his employment at Worldcom, Inc. ("Worldcom" or "Employer") on January 24, 2000.  (Administrative Record at H62, Appendix to Defendant's Motion for Summary Judgment [hereinafter "Admin. Record"].)  While Plaintiff was employed by Worldcom, Plaintiff was covered by a short-term disability insurance policy offered by Worldcom and underwritten by Defendant Hartford.  (Pl. Compl. ¶4; Hartford Life and Accident Insurance Company Policy at H1-H48, Appendix to Defendant's Motion for Summary Judgment [hereinafter "Hartford Policy"].)  Plaintiff's last day of work at Worldcom was on April 20, 2001. (Admin. Record at H62.)  On April 23, 2001, Plaintiff made a claim for short-term disability benefits under the Hartford Policy.  (<u>Id.</u> at H110.)  Worldcom paid Plaintiff for one week of sick time through April 27, 2001, but noted that Plaintiff's employment ended on April 20, 2001.  (<u>Id.</u> at H66.)

On the same day that Plaintiff made his claim under the Policy, Hartford sent a letter to Plaintiff requesting information from his physician about his alleged disability.  (<u>Id.</u> at H57.)  On May 2, 2001, Hartford spoke with Plaintiff's psychotherapist, William Silver, who informed Hartford that he had never advised Plaintiff to stop working.  (<u>Id.</u> At 110.)  Hartford, in turn, advised Plaintiff that he needed to have an attending physician call Hartford to confirm that a physician told Plaintiff to stay out of work, or Plaintiff would be denied benefits.  (<u>Id.</u> at H109.) Hartford heard nothing from Plaintiff or his physician for more than two weeks.  Hartford then sent Plaintiff another letter requesting information about his medical providers and evidence of his disability.  (<u>Id.</u> at H55-H56.)

On May 18, 2001, Plaintiff visited Dr. Louis R. Petrone, M.D., for the first time.  (Id. at H105; Letter from Dr. Petrone to Hartford Life, June 15, 2001 [hereinafter "Petrone Letter"].) On that same day, someone from Dr. Petrone's office called Hartford and informed Hartford that Plaintiff had been diagnosed with depression, alcohol abuse and hypertension, and that Dr. Petrone recommended admitting Plaintiff to an inpatient treatment facility.  (Admin. Record at H109.)  On June 6, 2001, Hartford personnel in its claims department contacted Dr. Petrone's office for additional information about Plaintiff's alleged disability.  "Joy", an employee of Dr. Petrone, told Hartford that Dr. Petrone saw Plaintiff for the first time on May 18, 2001, and that Dr. Petrone would not certify that Plaintiff was disabled prior to that date.  (Id. at H52.)  In the letter sent by Dr. Petrone to Hartford on June 15, 2001, Dr. Petrone again confirms that Plaintiff first saw Dr. Petrone on May 18, 2001, and notes that Plaintiff should be on disability coverage until Plaintiff can complete an alcohol rehabilitation program.  (Petrone Letter.)

In an undated letter Psychotherapist Silver again communicated with Hartford, noting that he had seen Plaintiff on April 26, 2001 and May 2, 2001 and recommended Plaintiff undergo an alcohol rehabilitation program.  (Admin. Record at H68.)  This letter did not confirm that Plaintiff was disabled, or that Mr. Silver had told Plaintiff to stay out of work.  (Id.)

In a letter from Plaintiff's counsel to Hartford, which appears to have been faxed to Defendant on June 20, 2001, Plaintiff's counsel states that "my client is making a claim for short term disability starting May 18, 2001."  (Letter from Adrian R. Reid to Tina M. Palmer, Admin. Record at H75.)  This letter recognizes that no doctor had declared Plaintiff disabled prior to May 18, 2001.

From the date that Hartford was notified of Plaintiff's claim, April 23, 2001, until a final

decision was made to deny Plaintiff's claim on June 7, 2001, Hartford worked diligently to

ascertain whether Plaintiff was disabled as of Plaintiff's last day of work at Worldcom, April 20,

2001.  Based upon the information gathered, Hartford made a determination that Plaintiff was not

disabled as of his last day of work at Worldcom, and accordingly Plaintiff was not entitled to

short-term disability benefits under the Hartford Policy.  (Id. at H52.)

> B.    *Worldcom's Hartford Life and Accident Insurance Company Policy*

The Hartford Policy, which covers the short-term disability benefit plan for Worldcom,

states that an employee's coverage under the Policy terminates on the date on which the

employee ceases to be an active full time employee.  (Hartford Policy at H13.)  The Policy

defines an "active full time employee" as: "An employee who works for the Employer on a

regular basis in the usual course of the Employer's business.  Such employee must work the

number of hours in the Employer's normal work week."  (Id. at H6.)  The policy also defines

"actively at work" as follows: "You will be considered to be actively at work with the Employer

on a day which is one of the Employer's scheduled work days if you are performing, in the usual

way, all of the regular duties of your job on a full time basis on that day."  (Id.)

The Hartford Policy further grants full discretion to Hartford to make eligibility decisions

under the Policy.  It provides as follows:

> **Who interprets policy terms and conditions?**
> [Hartford has] full discretion and authority to determine eligibility for benefits and to
> construe and interpret all terms and provisions of the Group Insurance Policy.

(Hartford Policy at H15.)

## III.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to

4

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law.  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried.  Liberty Lobby, 477 U.S. at 247-49.

In ruling on a motion for summary judgment, the Court must view the evidence, and make all reasonable inferences from the evidence, in the light more favorable to the nonmoving party.  Liberty Lobby, 477 U.S. at 252.  Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the nonmoving party's evidence over that presented by the moving party.  Liberty Lobby, 477 U.S. at 255.  The nonmoving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion.  Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citing Liberty Lobby, 477 U.S. at 249).  The non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion.  Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).  Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury."  Liberty Lobby, 477 U.S. at 251-52.

IV.     **DISCUSSION**

A.     *The Court Will Review Hartford's Denial of Benefits Under the Arbitrary and Capricious Standard*

A denial of a claim for benefits brought pursuant to ERISA is governed by a *de novo* standard of review, unless the plan grants the administrator discretion to determine a participant's eligibility for benefits or to construe the terms of the plan.  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  When the plan grants discretion to the administrator to interpret the terms of the plan, the court must review the administrator's decision using an arbitrary and capricious standard of review.  Farina v. Temple Univ. Health Sys. Long Term Disability Plan, No 08-2473, 2009 WL 1172705, at **9-10 (E.D. Pa. April 28, 2009).  There are no "magic words" that grant discretion to the administrator—discretion may be granted implicitly or explicitly—however, when a plan is ambiguous, its terms are construed in favor of the insured.  Farina, 2009 WL 1172705, *10;  Heasley v. Belden & Blake Corp., 2 F.3d 1249, 1258 (3d Cir. 1993).

At the time the briefs were filed in this case, more than four years ago, the parties agreed that Hartford's decision to deny benefits to Plaintiff must be reviewed by this Court under the somewhat heightened or "sliding scale" arbitrary and capricious standard because Hartford has a conflict of interest in both funding and administering claims made under the Hartford Policy. However, recent decisions of the United States Supreme Court and the Third Circuit have held that the sliding scale standard is no longer appropriate in this kind of case.  See Metro. Life Ins. Co. v. Glenn, 128 S.Ct. 2343, 2351 (2008); Estate of Schwing v. Lilly Health Plan, 562 F.3d 522, 525 (3d Cir. 2009); see also Ellis v. Hartford Life & Accident Ins. Co., 594 F. Supp. 2d 564, 566

(E.D. Pa. 2009).  Under the new standard, the conflict of interest is one factor that the Court must weigh in deciding whether Hartford's decision to deny benefits was arbitrary and capricious.  It is no longer a factor that heightens the standard of review.  Metro. Life Ins., 128 S.Ct. at 2351.  A recent Third Circuit case discussing the new standard set forth in Metro Life Ins. v. Glenn noted that in Glenn, the Supreme Court held that:

> courts should continue to apply a deferential abuse-of-discretion standard of review in cases where a conflict of interest is present, but that courts should take the conflict into account not in formulating the standard of review, but in determining whether the administrator or fiduciary abused its discretion.

Schwing, 562 F.3d at 525.  In applying the abuse of discretion standard to a particular case, the Third Circuit noted that courts must consider procedural concerns and structural concerns, and that: "courts should take account of several different considerations of which a conflict of interest is one, and reach a result by weighing all of those considerations." Id. (internal quotations omitted).  After weighing all of the case-specific considerations present here, including Hartford's conflict of interest, the fact that the Hartford Policy unambiguously grants discretion to Hartford to determine eligibility and to interpret the terms of the plan,[2] the depth of Hartford's investigation of the claim, and a review of the administrative record, this Court will uphold Hartford's decision to deny Plaintiff's claim for benefits and find that Hartford did not act in an arbitrary and capricious manner in deciding to deny disability benefits.[3]

---

[2]  The Hartford Policy grants Hartford "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions" of the Policy. (Hartford Policy at H15.)

[3]  The Court notes that had it made its decision under the "sliding scale" approach set forth in Pinot v. Reliance Standard Life Ins. Co., 214 F.3d 377 (3d Cir. 2000), which was the law at the time of the claim, the result in this action would have been the same, and Defendant's request for summary judgment would have been granted.

B.    *Hartford's Decisions to Deny Plaintiff's Claim for Benefits was Not Improper*

In its Motion for Summary Judgment, Hartford argues that there is no genuine issue of material fact as to whether Plaintiff was disabled on his last day of work at Worldcom, April 20, 2001, and therefore its decision to deny Plaintiff short-term disability benefits was not arbitrary and capricious.  Defendant asserts that Plaintiff's coverage under the Hartford Policy ceased on the day that Plaintiff stopped being an active full time employee of Worldcom, April 20, 2001. Therefore, Plaintiff was not entitled to benefits under the Policy when Plaintiff made his claim for benefits on April 23, 2001.

The crux of Plaintiff's argument in opposition to Defendant's Motion to Dismiss is that Plaintiff was disabled before that decision was made by his doctors.  Plaintiff asserts that the nature of his claimed disability, alcohol abuse and hypertension, is cumulative, and that it was unreasonable for Hartford to assume that Plaintiff became disabled only after Plaintiff left his employment.

Under the plain terms of the Hartford Policy, Plaintiff's last day of eligibility for short-term disability benefits was Plaintiff's last day of work, which was April 20, 2001.  Plaintiff first filed for disability benefits on April 23, 2001, but his doctors have declined to certify that Plaintiff suffered from a disability before May 18, 2001, the date of Plaintiff's first visit with Dr. Petrone.  Hartford made extensive efforts, by contacting Plaintiff and his doctors, to determine Plaintiff's eligibility for short-term disability benefits, but after reviewing all available information made a determination that Plaintiff was not eligible for short-term disability benefits on or before Plaintiff's last day of work at Worldcom.  This decision was not arbitrary and capricious, but based upon substantial evidence gathered by Defendant during its investigation of

8

the claim.

Plaintiff asserts that the nature of his disability leads to the conclusion that he must have been disabled on his last day of work.  Plaintiff states: "It is simply unreasonable, on the part of the decision maker to assume that some how [sic] these problems had occurred after April 23, 2001. On the contrary, this Court can take judicial notice of the fact that hypertension and alcohol abuse damage an individual over the course of many months or perhaps years."  (Pl.'s Opp. to Def.'s Mot. for Summary Judgment, at 4.)  This Court declines to take judicial notice of the effect of Plaintiff's illness on Plaintiff prior to the time that Plaintiff was under a physician's care for his illness.  Neither this Court, nor Defendant Hartford, should be required to guess what affect, if any, Plaintiff's illness had on him prior to his diagnosis, especially since Plaintiff's doctor would not certify that Plaintiff was disabled prior to Plaintiff's first visit to his office, May 18, 2001.  (Petrone Letter, Admin. Record at H105.)  Plaintiff's attorney even seems to concede, in his letter to Tina Palmer at Hartford, that Plaintiff's claim for disability began on May 18, 2001, the date Dr. Petrone first declared that Plaintiff was disabled.  (Letter from Adrian R. Reid to Tina M. Palmer, Admin. Record at H75.)  Under these circumstances, the Court cannot conclude that Hartford's decision to deny Plaintiff short-term disability benefits was arbitrary and capricious.

The fact that Hartford both funds and administers the plan is not sufficient reason to declare that Hartford's decision was arbitrary and capricious.  See Metro. Life Ins., 128 S.Ct. at 2351 (conflict is just one factor to be considered in determining whether a denial of benefits was arbitrary and capricious).   Hartford made every effort to obtain information about Plaintiff's disability, but was unable to locate any information to prove that Plaintiff was disabled when he

was working and was still covered under the Hartford Policy.  Under this circumstance, and considering all procedural and structural concerns as noted above, the conflict of interest should not be granted excessive weight in determining if Hartford's decision was arbitrary and capricious.  Like the decision to deny benefits in <u>Schwing</u>, the decision to deny Plaintiff's claim for benefits was not so close that "this factor would act as a 'tiebreaker' tipping the scales in favor of finding" that Hartford abused its discretion.  562 F.3d at 526.

The Court concludes, as a matter of law, that Hartford conducted an appropriate investigation of Plaintiff's claim.  The administrative record before the Court is more than adequate to support Hartford's denial of Plaintiff's claim.  Viewing all facts in the light most favorable to Plaintiff, we cannot conclude that Hartford's decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law."  <u>Abnathya v. Hoffmann-La Roche, Inc.</u>, 2 F.3d 40, 45 (3d Cir. 1993).

## V.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted.  An appropriate Order follows.